UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16 CV 2149 |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| DOUGLAS A. KENNY, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

This matter is before the Court on the Plaintiff United States of America's Motion for Summary Judgment. (ECF #21). Defendant, Douglas Kenny filed an Opposition, and Plaintiff filed a Reply in support of its Motion. (ECF #22, 23). Defendant has also filed a Motion for Leave to File Sur-Reply Instanter, which attached an affidavit signed by Defendant. (ECF #24). Plaintiff, in response, filed an Opposition to Defendant's Motion to file Sur-Reply, or in the Alternative Motion for Leave to File Sur-Sur Reply. (ECF #25). The Court will accept the Sur-Reply and accompanying affidavit for filing over the Plaintiff's objection. There is no need for Plaintiff to file a Sur-Sur-Reply, however, as the Court has all of the information necessary to make a considered decision on the matter at hand.

1

## FACTS[1]

The United States of America originally filed this action against Mr. Kenny on August 26, 2016. Count One of the Amended Complaint seeks to reduce to judgment the following tax assessments, including the taxes, estimated tax penalties, late filing penalties, failure to pay penalties, and interest: (1) $148,343.99 from the 2002 income tax period; (2) $62,392.72 from the 2003 income tax period; (3) $62,341.73 from the 2004 income tax period; (4) $184,167.84 from the 2005 income tax period; (5) $138,251.69 from the 2006 income tax period; (6) $60,234.89 from the 2007 income tax period; (6) $87,488.05 from the 2008 income tax period; (7) $68,010.06 from the 2009 income tax period; (8) $202,408.51 from the 2010 income tax period; (9) $138,102.43 from the 2011 income tax period; (10) $79,717.02 from the 2012 income tax period; (11) $68,161.98 from the income tax period; (12) $33,947.50 from the 2012 income tax period; (13) $77,536.88 from the income tax period. The total amount sought in back taxes, penalties and interest is $1,411,105.29.

Count Two seeks to reduce to judgment assessments made against Mr. Kenny as a person responsible for collecting, truthfully accounting for, and paying over to the IRS, the trust fund portion of federal income and Federal Insurance Contributions Act ("FICA") taxes withheld from the wages of his employees in the following amounts, including all payments, credits, abatements, accruals and costs, in a total amount of $10,076.34. Count Three seeks payment of federal tax liabilities for withheld income and FICA taxes, as well as the employer's portion of the FICA taxes, Federal Unemployment Tax Act ("FUTA") assessments, along with penalties, and interest, totalling $41,743.65. Finally, Count Four seeks an Injunction requiring Mr. Kenny

---

[1]Except as otherwise cited, the factual summary is based on the parties' statements of fact. Those material facts which are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to Defendant, the non-moving party.

to Comply with his income tax and employment tax obligations under 26 U.S.C. §6072 and 26 C.F.R. §1.6072-1; 26 U.S.C. §1401-1403 and 26 C.F.R. §1.1401-1; 26 U.S.C. §6151; 26 U.S.C. §6654, and 26 C.F.R. §1.6654-1; 26 U.S.C. §§3102, 3402, 3111, and 3301; 26 U.S.C. §§6302, 6157 and 26 C.F.R. §§31.6302-1, 31.6302(c)-1 and (c)-3.

It is undisputed that Mr. Kenny understood from 1991 through the present day, that he had an obligation to pay income taxes and to make estimated tax payments for his income tax. He admits that he has had trouble paying his taxes since at least 1992. Mr. Kenny eventually satisfied his tax obligations for the years 1992-1995, albeit years after each obligation became due, and in part through the seizure and sale of his property. His 1996 tax obligations were never completely paid off, and the Internal Revenue Service ("IRS") eventually wrote off $12,880.20 upon expiration of the statute of limitations on that obligation. Between 1996 and 2001, the IRS has written off $447,669.24 in Mr. Kenny's income tax liability, including penalties and interest, on a combined reported adjusted gross income of $1,049,420.00. The government is not pursuing recovery of these write-offs.

Between 2002 and 2015, Mr. Kenny reported $2,795,065.00 in adjusted gross income on his income tax returns. Mr. Kenny does not dispute that as of February 14, 2018, he has a total outstanding balance, including the Federal Income Tax Form 1040 assessments, all statutory additions and accruals, and all payments, credits, and abatements, of $1,462,615.70. He does challenge the recoverability of some of the assessments, however, because he believes that the government has miscalculated the applicable period for the statutes of collection. Mr. Kenny admits that he has also been assessed a trust fund recovery penalty assessment under 26 U.S.C. §6672(a), which with all statutory additions and accruals, and all payments, credits, and abatements, has a total outstanding balance of $10,689.00 as of February 14, 2018. In addition,

he admits that a delegate of the Treasury Secretary made assessments under the Federal Unemployment Tax Act (Form 940), the Federal Insurance Contributions Act and withheld income taxes (Form 941), which, as of February 14, 2018, with all statutory additions and accruals, and all payments, credits, and abatements, have a total outstanding balance of $42,134.37. In 2009, Mr. Kenny was assessed a penalty for failure to file Form W-2 for the year 2006, which totals $2,191.83, also as of February 14, 2018. The Defendant admits that each of these assessments has been made and that he had notice of each of these amounts. Mr. Kenny also owes income taxes for 2016 and does not dispute that he owes taxes for 2017. He admits that he has not paid estimated tax payments due to "a humongous debt and lack of cash flow."

The United States asserts that on September 7, 2004, Mr. Kenny agreed to an extension of the statute of limitations until December 31, 2017 for his 2002 income tax liabilities, and until May 31, 2019 for his 2003 income tax liabilities. The United States also asserts that on the same date, Mr. Kenny entered into an installment agreement that included his 2002-2004 income tax liabilities, which the IRS terminated on December 17, 2007. Defendant filed an affidavit attesting that he has no memory of signing any agreements to extend the statute of limitations for the collection of these tax liabilities.

The parties agree that on April 23, 2013, Mr. Kenny submitted an offer in compromise ("OIC") to the IRS for his 2002-2005 income tax liabilities and his employment tax liabilities (Forms 940 and 941). The IRS asserts that this OIC was rejected or returned on April 29, 2013, then re-opened, and rejected on December 10, 2013. Mr. Kenny denies that the offer was rejected, claiming that it was returned within a matter of days for non-compliance, and was not processed. The parties agree that Mr. Kenny submitted another OIC to the IRS on February 24, 2014, which included his 2002-2005 income tax liabilities and his employment tax liabilities.

The government contends that this OIC was rejected on September 16, 2014. Mr. Kenny denies that this offer was rejected. Finally, the parties agree that Mr. Kenny submitted a third OIC including the same liabilities on March 1, 2016. Mr. Kenny disputes the government's contention that this OIC was rejected on March 9, 2016.

Mr. Kenny does not dispute that he has a gambling addiction. He also admits that in 2007 he pled guilty to grand theft and passing bad checks. The charges he pled guilty to were based on his admitted practice of "floating money back and forth, moving checks back and forth, [and] playing the float" to make it appear that he had more money in his accounts than actually existed. Mr. Kenny admits that he has continued to engage in this practice of "floating" checks, and has done so as recently as November 2017. He does not dispute that he intentionally keeps the balance of his business bank account low to prevent creditors from levying the account to collect debts that he owes. Despite his debts and obligations, Mr. Kenny admits that he lives in a rented condo with a monthly rent of $4,800.00. He admits to having spent at least an average of $1,839.00 per month on meals and gas in 2017. Since 2006, Mr. Kenny and his wife have traveled extensively. He is also paying on his son's student loans, and paid most of his daughter's $50,000.00 college tuition.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

5

> interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing prior FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence

6

that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). A party asserting that a fact is genuinely disputed must cite "to particular parts of materials in the record" or show "that the [admissible] materials cited [by the other party] do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c).

> FED. R. CIV. P. 56(e) states:
>
> > If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may... consider the fact undisputed for purposes of the motion; [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it. . .

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine

factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

I. <u>Tax Liabilities</u>

The Internal Revenue Service ("IRS") is authorized by the Treasury Secretary to assess taxes, "including interest, additional amounts, additions to the tax, and assessable penalties." 26 U.S.C. §6201(a). Assessments are presented through Certificates of Assessments, Payments, and Other Specified Matters, which are known as Forms 4340. Forms 4340 are presumptive proof of the assessments, abatements, payments, and credits for a particular tax period for a particular taxpayer as of a particular date, and these forms provide prima facie proof of a taxpayers liabilities. *See, e.g., Sinder v. United States*, 655 F.2d 729 (6th Cir. 1981); *Gentry v. United States*, 962 F.2d 555, 557 (6th Cir. 1992). The dates, amounts assessed, and balances set forth in these forms are presumed correct absent specific contrary evidence. *See, e.g., Gentry*, 962 F.2d at 558.

In this case, the government has, through the Forms 4340, and other submitted evidence, established a prima facie case that Mr. Kenny owes $1,462,615.70 for income tax liabilities for the years 2002 through 2015, plus interest and other statutory additions that may have accrued after February 14, 2018. It has also established that Mr. Kenny has been assessed trust fund penalties under 26 U.S.C. §6672(a) for the quarterly tax periods ending June 30, 2011, September 30, 2011, December 31, 2011, March 31, 2012, June 30, 2012, September 30, 2012, and December 31, 2012, in the amount of $10,689.00 plus interest and other statutory additions that may have accrued after February 14, 2018. The evidence also presumptively establishes that Mr. Kenny has been assessed Form 940 liabilities for the tax years 2002 and 2005, and Form 941

8

liabilities for the quarterly periods ending March 31, 2005, September 30, 2005, December 31, 2005, March 31, 2006, June 30, 2006, and September 30, 2006, in an amount of $42,134.37, plus interest and other statutory additions that may have accrued after February 14, 2018. Finally, the evidence submitted by the government presumptively establishes that the IRS assessed $2,191.83, plus interest and other statutory additions that may have accrued after February 14, 2018, against Mr. Kenny for failing to file Forms W-2 for the tax year 2006.

Mr. Kenny does not dispute that amounts assessed were owed or properly calculated; admits to having received proper notice of the above assessments and demands for payment thereof; and, admits that he has not paid these assessed amounts. He has submitted no evidence that would contradict the amounts sought by the government and has identified no facts that would challenge the validity or accuracy of the amounts sought. Therefore, there is no dispute that the amounts sought by the government to satisfy the assessments outlined in the First Amended Complaint are valid and accurate, and have been properly assessed against Mr. Kenny. Mr. Kenny does, however, challenge the collectability of some of these assessments under the applicable statute of limitations for tax collections.

II. Collectability

The United States generally has ten years from the date of an assessment to file suit in court to collect unpaid tax liabilities. See 26 U.S.C. § 6502(a). This action was filed on August 26, 2016. Therefore, there is no dispute that the government is entitled to collect the tax liabilities identified in the Complaint which were assessed for the 2006-2015 tax years. Mr. Kenny contends, however, that the government is not permitted to pursue collection of any tax liabilities assessed prior to the 2006 tax year.

9

The parties agree that Mr. Kenny's earliest assessment date for his 2004 and 2005 tax liabilities was May 23, 2005. Absent any tolling or other extension, the statute of limitations on these assessments would have run on May 23, 2015. However, the government argues that the statute of limitations on Mr. Kenny's tax assessments for 2004 and 2005 were suspended during the pendency of his Offers of Compromise.

A. <u>Offers in Compromise</u>

The filing of an OIC suspends the collection period while the offer is pending, for thirty days after an offer is rejected, and for the period of time that a timely filed appeal of a rejection is being considered on appeal. 26 U.S.C. §6331(k); I.R.M. §5.1.19.4.4(4). An OIC that is returned without processing does not suspend the collection period for the assessments related to that offer. *See* Treas. Reg. §301.7207-1(d)(2)(2002). The government has provided evidence, including copies of the Integrated Collection System History for his collection case, which indicate that Mr. Kenny submitted an OIC on April 23, 2013 and that the IRS finally returned it on December 10, 2013. This extended the statute of limitations for these assessments by 231 days while the offer was pending.[2]

Defendant claims that this OIC was returned for non-compliance on April 29, 2013 and never re-filed. Accordingly he argues that this OIC tolled the collections period for six days not for 231 days as argued by the Plaintiff. Plaintiff admits that the OIC was previously returned "solely to delay," but the documents provided show that it was re-opened as a "return

---

[2] In its original motion, the Government sought to recognize an extension of 241 days arguing that the December 10, 2013 date was a rejection and not a return. When an OIC is rejected the collection period is extended by the period of time between filing and rejection, and by an additional thirty days after the rejection. 26 U.S.C. §6331(k). They abandoned the argument for the additional thirty days in their reply, conceding that the December 10, 2013 date was a date of return and not a date of rejection. Thus, only the period during which the OIC was pending would be considered an extension of the collections period.

10

consideration," processed, and later returned for failure to address tax compliance issues after that date. (ECF #23-2 at 1, 8; 21-19; 21-20). The government has submitted evidence that clearly shows the OIC was pending on November 6, 2013, when an IRS Officer Specialist first performed an initial analysis of the OIC, indicating that the IRS decided to re-open and reconsider it. Defendant states that the IRS had no ability to reopen the OIC but cites no evidence or legal authority to support this statement.

Defendant has offered no evidence that would contradict the IRS's evidence showing that the April 29, 2013 OIC was re-opened and remained pending until it was finally rejected on December 10, 2013. Because the OIC was revived, the collections period was tolled during the entire pendency of the offer. Mr. Kenny's attestation that the OIC was returned to him for non-compliance in a matter of days, even if taken as true, does not address or contradict the evidence provided by Plaintiffs showing that after this occurred the OIC was re-opened, processed, and evaluated. He has, therefore, failed to meet his burden of showing that there is evidence that, if believed, would show that this OIC was not pending between its filing and December 10, 2013.

Mr. Kenny does not contest that he submitted a second OIC on February 24, 2014, which was rejected after 204 days. This extended the statute of limitations for an additional 234 including the thirty days after its rejection. Finally, an OIC submitted by Mr. Kenny on March 1, 2016 was pending for eight days, consequently adding that amount of time to the statute of limitations. These three OIC, collectively extended the limitations period for Mr. Kenny's 2004 and 2005 tax liabilities by 473 days, taking it out to September 7, 2016, twelve days after the Complaint in this case was filed.

The evidence provided can only support the conclusion that the government timely filed its Complaint with regard to Mr. Kenny's 2004 and 2005 tax liabilities.

B. Agreed Extension to the Statute of Limitations

The government has provided evidence presumptively establishing that, in conjunction with entering an installment agreement with the IRS, Mr. Kenny agreed to extend the statute of limitations on his 2002 and 2003 income tax liabilities until December 31, 2017, and May 31, 2019, respectively. This agreement is evidenced in the Forms 4340 provided by the government, which forms provide *prima facie* evidence of the agreement. *See, e.g., United States v. Clinkscale*, 2014 WL 3749407, at *5-6 (N.D. Ohio July 30, 2014). To overcome the presumptive accuracy of the information contained in those forms, Mr. Kenny has the burden to provide contrary evidence. The only thing Mr. Kenny has provided in answer to the government's evidence is his own attestation that he "has no memory of signing an agreement to extend the statute of limitation for the collection of tax years 2002 and 2003." (ECF #24-2). This admission to a lack of memory is not a contradiction of the information provided in the forms, and does not create a genuine dispute of material fact. *See, e.g., Pratt v. Brown Mach. Co.*, 855 F.2d 1225, 1233 (6th Cir. 1988); *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 300 (6th Cir. 2009). An alleged lack of memory does not even rise to the level of an allegation or denial, which, without significant probative evidence, itself would be insufficient to create a triable issue. *See, Clinkscale*, 2014 WL 3749407, at *6. The government has satisfied its burden of showing that there is no genuine issue of material fact for trial. All evidence supports a finding that Mr. Kenny agreed to extend the statute of limitations for his 2002 and 2003 tax liabilities. Consequently the government is timely in its attempt to collect those amounts.

III. Injunctive Relief/ Receivership

The government seeks the issuance of an injunction requiring Mr. Kenny to comply with his on-going tax obligations in order to incentivize him to come into and stay in compliance with the tax laws. Although this Court generally disfavors the issuance of injunctions that do no more than require on-going compliance with the law, this case presents unique circumstances that make an injunction an appropriate and necessary tool for the government's enforcement of the tax laws. The Sixth Circuit has identified five nonexclusive factors relevant to determining when a court should grant a §7402(a) injunction. Courts are to consider the gravity of the offense; the extent of his participation; scienter; the recurrent nature of his offense; and the likelihood that his business activities will involve him in the same offense again. All five factors, and several others not enumerated, weigh in favor of issuing an injunction in this case.

Mr. Kenny has had 25 years of sustained non-compliance with his tax obligations, throughout which time he has lived an extravagant lifestyle and engaged in excessive and compulsive gambling. He is solely responsible for his taxes and the payment of his employees' employment taxes. He continues to be self-employed. Mr. Kenny admits to having an on-going gambling addiction; living a lifestyle that is well beyond his means, including excessive housing and other living expenses; and, continuing to prioritize discretionary spending on his own behalf and on behalf of others who are not legal dependents over paying his tax obligations and other debts. The government has already written off over $445,000.00 in income tax liabilities, and even with this concession, Mr. Kenny still owes over $1.5 million dollars in unpaid taxes and fees for the periods at issue in this case. Further, he has not paid his 2016 and 2017 taxes in full. History and all other available evidence suggests that Mr. Kenny is reasonably likely to continue violating the internal revenue laws if an injunction is not issued to raise the bar for non-

compliance. The Court, therefore, orders that Mr. Kenny comply with all current and future tax laws and obligations, including but not limited to properly and timely filing future returns as they come due and paying future taxes as they come due, via timely payments of deposits and estimated tax payments. The government has, at least, temporarily withdrawn its request for receivership. Therefore, the Court will dismiss that request without prejudice.

## CONCLUSION

For all of the reasons set forth above, Plaintiff's Motion for Summary Judgment (ECF #21) is GRANTED on all counts. Defendant's request to file a sur-reply (ECF #24) is GRANTED, and Plaintiff's request to file a sur-sur-reply (ECF #25) is DENIED. Judgment is entered in favor of the Plaintiff and against Defendant on all counts. Defendant is liable for the following amounts: (1) $1,462,615.70, plus interest and other statutory additions that may have accrued after February 14, 2018 on Count One; (2) $10,689.00, plus interest and other statutory additions that may have accrued after February 14, 2018 on Count Two; (3) $44,326.20, including penalties, plus interest and other statutory additions that may have accrued after February 14, 2018 on Count Three. Further, with regard to Count Four, Mr. Kenny is hereby ordered to comply with his income tax and employment tax obligations under 26 U.S.C. §6072 and 26 C.F.R. §1.6072-1; 26 U.S.C. §1401-1403 and 26 C.F.R. §1.1401-1; 26 U.S.C. §6151; 26 U.S.C. §6654, and 26 C.F.R. §1.6654-1; 26 U.S.C. §§3102, 3402, 3111, and 3301; 26 U.S.C. §§6302, 6157 and 26 C.F.R. §§31.6302-1, 31.6302(c)-1 and (c)-3.

IT IS SO ORDERED.

/s/ Donald C. Nugent
Donald C. Nugent
United States District Judge

Date: May 30, 2018

14